UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WAYNE WINDISCH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:09 CV 1347 RWS (LMB) |
| ) | |
| TERRY RUSSELL,[1] ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the petition of Wayne Windisch for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**Procedural History**

Petitioner is presently incarcerated at the Eastern Reception, Diagnostic, and Correctional Center in Bonne Terre, Missouri, pursuant to the judgment and sentence of the Circuit Court of Cape Girardeau County, Missouri. (Resp't Ex. C at 75). On May 3, 2005, petitioner was found guilty after a jury trial of first degree statutory sodomy. (Id. at 56). He was sentenced to a term of imprisonment of 20 years. (Id. at 76).

Petitioner raised two points on direct appeal of his conviction. (Resp't Ex. D). Petitioner

---

[1] Terry Russell is currently the warden at Eastern Reception, Diagnostic and Correctional Center, petitioner's place of incarceration. As such, Terry Russell should be substituted for Steve Larkins as the party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

1

first argued that the trial court plainly erred in failing to sua sponte declare a mistrial after an expert testified regarding the victim's credibility. Petitioner also argued in his first point that the trial court abused its discretion in allowing hearsay testimony by three of the State's witnesses because it constituted improper bolstering. In his second point, petitioner argued that the trial court plainly erred in admitting evidence that petitioner possessed pornographic magazines, and that its introduction into evidence was prejudicial error and violated his First Amendment rights. On September 5, 2006, the Missouri Court of Appeals for the Eastern District affirmed petitioner's conviction. (Resp't Ex. G).

On February 26, 2007, petitioner, through counsel, filed a motion to vacate, set aside or correct the judgment of the Circuit Court of Cape Girardeau County, Missouri, pursuant to Missouri Supreme Court Rule 29.15. (Resp't Ex. H at 117-32). In this motion, petitioner raised the following claims: (1) he was denied due process and a fair trial when the State questioned its forensic nurse as to whether she recognized any deception during her interview with the victim; (2) trial counsel was ineffective for failing to depose the forensic nurse; (3) trial counsel was ineffective for failing to request a transcript of petitioner's police interview with Detective Estes; (4) his due process and fair trial rights were infringed when the State asked petitioner on cross examination whether he had an explanation for why the victim accused him of sexual abuse, thereby shifting the burden of poof; (5) his constitutional rights were infringed when the State elicited testimony from several witnesses about their conversations with the victim concerning his accusations of sexual abuse; (6) trial counsel was ineffective for failing to object to testimony from witnesses about their conversations with the victim concerning his accusations of sexual abuse as hearsay; and (7) his constitutional rights were infringed when the State elicited testimony

2

that petitioner possessed pornographic magazines and pictures in plain view of the victim. On June 20, 2007, the motion court denied petitioner's motion for post-conviction relief. (Id. at 140-48).

Petitioner timely filed a notice of appeal from the denial of post-conviction relief. (Id. at 149). Petitioner raised the following claims on appeal: (1) he was denied due process and a fair trial because the State presented expert testimony regarding the victim's credibility; (2) he was denied due process and a fair trial because the State failed to disclose that Nurse Blevins had been trained in deception detection; (3) he was denied due process and a fair trial when the police manufactured evidence to support the victim's allegations; (4) he received ineffective assistance of counsel because trial counsel failed to interview or depose Nurse Blevins; (5) he received ineffective assistance of counsel because trial counsel failed to obtain a transcript of petitioner's police interview; (6) he was denied due process and a fair trial when the State attempted to shift the burden of proof to petitioner; (7) he was denied due process and a fair trial because the State impermissibly asked petitioner to comment on the truthfulness of Officer Darren Estes' testimony; (8) he was denied the right to confront witnesses because the State elicited hearsay that reported the victim's allegations; (9) he was denied the right to due process and a fair trial when the State sought hearsay testimony of the victim's allegations from four witnesses; and (10) he received ineffective assistance of counsel when trial counsel failed to obtain a transcript of petitioner's police interview. (Resp't Ex. I). On April 15, 2008, the Missouri Court of Appeals for the Eastern District affirmed the judgment of the motion court. (Resp't Ex. L).

On August 21, 2009, petitioner, through counsel, filed a petition for a writ of habeas corpus, raising the following grounds for relief: (1) he was denied effective assistance of counsel

3

when trial counsel failed to interview or depose forensic nurse Kathy Blevins; (2) his rights to due process and a fair trial were violated when the State did not disclose during discovery that Ms. Blevins would present an expert opinion regarding the lack of deception in the victim's allegations;[2] (3) his First Amendment rights were violated when petitioner was alleged to have possessed pornography even though it had nothing to do with the allegations made by the prosecutor; (4) his Confrontation Clause rights were violated when the State presented hearsay testimony from four witnesses regarding the victim's allegations; and (5) he was denied effective assistance of counsel, due process, and a fair trial when trial counsel failed to have petitioner's two-hour police interview transcribed. (Doc. No. 1).

On October 20, 2009, respondent filed a Response to Order to Show Cause, in which he argues that ground two and ground three are procedurally defaulted and fail on their merits, while the rest of petitioner's grounds for relief fail on their merits. (Doc. No. 8).

**Facts**

The sufficiency of the evidence is not at issue. The Missouri Court of Appeals summarizes the relevant facts as follows:

> Viewed in the light most favorable to the verdict, the evidence at trial showed that the victim, a ten-year-old boy at the time, told his mother that [petitioner] made the victim perform oral sex on [petitioner] thirty to forty times during the time frame of July 4, 2004 to November 21, 2004. After the victim told his mother, she related what the victim told her to the victim's father, and then called the police. Officer Robert Ross ("Officer Ross") responded and the victim's parents told him that their son had been molested while he was at [petitioner's] home. The victim then told Officer Ross what had happened to him, when it happened, and how many times it had happened. (Resp't Ex. I at 44-45).

---

[2]Petitioner combined this claim with his first ground for relief. For clarity, the undersigned will discuss this claim separately and will renumber the remainder of petitioner's grounds for relief accordingly.

4

> Thereafter, the victim was interviewed by Kathy Blevins ("Blevins"), a forensic nurse. The victim repeated his account of the events to Blevins. Detective Darren Estes ("Detective Estes") was present for this interview. After hearing the victim's account, Detective Estes spoke with [petitioner]. [Petitioner] denied the allegations.
>
> At the trial, the State called the victim to testify. The State also called the victim's mother, his father, Officer Ross, Detective Estes, and Blevins to testify. Each of these witnesses testified about the victim's statements made in their presence.
>
> [Petitioner] called nine witnesses to testify and testified in his own defense at the trial. At the close of the evidence, the jury found [petitioner] guilty of statutory sodomy in the first degree. The trial court subsequently sentenced [petitioner] to twenty years' imprisonment.

(Resp't Ex. G at 2).

## A.    **Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529

5

U.S. at 413. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S. Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1410, 120 S.Ct. 522.

**B.     Procedural Default**

Respondent argues that petitioner's second and third claims are procedurally defaulted.

Petitioner raised his second claim in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals held that this claim was not cognizable in a Rule 29.15 proceeding. (Resp't Ex. L at 4). The Court cited Tisius v. State, 183 S.W.3d 207, 212 (Mo. 2006), which states that if the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding. (Id.). The Court noted that any failure to disclose would have been apparent at trial and, therefore, does not fall into the exception that would allow it to be considered on a 29.15 motion. (Id.).

"'In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Oglesby v. Bowersox, 592 F.3d 922, 924 (8th

6

Cir. 2010) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To meet the exception of a fundamental miscarriage of justice, "a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). "If 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' a federal habeas court is precluded from reviewing the claim." Oglesby, 592 F.3d at 924 (quoting Harris v. Reed, 489 U.S. 255, 263 (1989)).

Here, the Missouri Court of Appeals was "the last state court rendering a judgment in the case." Rule 29.15 is a "firmly established and regularly followed" state procedural rule that provides "substantive, well-established procedures that movants are required to follow in order to have their claims considered post-trial." Francis v. Miller, 557 F.3d 894, 899 (8th Cir. 2009) (citation omitted). The Missouri Court of Appeals denied petitioner's second claim based on a firmly established and regularly followed state procedural rule. As such, petitioner has procedurally defaulted this claim.

Petitioner has not established cause to excuse the procedural default. Petitioner should have raised this claim in his direct appeal and provides no explanation for his failure to do so. Similarly, petitioner cannot demonstrate that he is "actually innocent." The undersigned finds no basis to excuse petitioner's procedural default.

Petitioner raised his third claim in his direct appeal. (Resp't Ex. D at 12-13). The Missouri Court of Appeals found that petitioner did not preserve this issue for appellate review because he did not object to this evidence at trial, and he did not raise this issue in his motion for a new trial. (Resp't Ex. G at 8). The Court thus reviewed for plain error only. (Id.).

7

Currently, there is a split within the Eighth Circuit with respect to whether plain error review by the state appellate court "cures" a procedural default. Shelton v. Purkett, 563 F.3d 404, 408 (8th Cir. 2009). The undersigned will follow the line of cases permitting federal habeas review in such circumstances, mindful that such review is for "manifest injustice," coupled with the deferential standard of review mandated in habeas cases by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Id.

**C.  Petitioner's Claims**

Petitioner raises five grounds for relief. The undersigned will address each ground for relief in turn.

**1.  Ground One**

In his first ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to interview or depose Ms. Blevins and was, therefore, unprepared for Ms. Blevins' testimony regarding the lack of deception detected from the victim.

The following exchange occurred on the State's direct examination of Ms. Blevins:

[PROSECUTOR]: And Ms. Blevins, are you trained in identifying deception in children?

[MS. BLEVINS]: Part of the Corner House Model and the interview model is set up in a way to ask questions in a way that children will just answer the questions. They're given permission that if I make a mistake, they can correct me. They're given permission if I ask a difficult question, that they can tell me the question is too difficult and I'll reword the question to make it simpler for them to understand. They're given permission to tell me that if there's something that they don't know, that they'll tell me that they don't know.

[PROSECUTOR]: And Ms. Blevins, was there any evidence of deception when you talked to [the victim]?

[MS. BLEVINS]: No.

8

(Resp't Ex. A at 107).

Petitioner raised this claim in his post-conviction relief motion, and in his appeal from the denial of post-conviction relief. The motion court noted that the decision whether to interview or depose a witness is generally a matter of trial strategy, and "traditionally, the manner in which trial strategy is implemented does not provide an adequate basis for an ineffective assistance of counsel claim." (Resp't Ex. H at 144) (citation omitted). The court then rejected petitioner's claim, stating, "[c]ounsel fails to explain how deposing Nurse Blevins would have provided a viable defense or any testimony helpful to [petitioner], nor has he presented any evidence that counsel's failure to depose Blevins would have created reasonable doubt in this case." (Id.).

The Missouri Court of Appeals held as follows:

> For his fourth point, [petitioner] contends that trial counsel was ineffective because counsel failed to interview or depose Nurse Blevins, and that as a result of counsel's failure to investigate, counsel did not discover Nurse Blevins had training as a 'deception detection expert' and was not in a position to point out to the trial court the state intended to use prohibited lie detector testimony.
> In his Rule 29.15 motion, [petitioner] alleged that he was denied the right to effective assistance of trial counsel when his attorney failed to interview or depose Nurse Blevins. The motion court denied this claim because [petitioner] did not state facts to show how deposing Nurse Blevins would have helped [petitioner] provide a viable defense or create reasonable doubt.
> On direct appeal, this court held that Nurse Blevins did not provide improper particularized testimony on credibility. Alleged trial errors raised in a direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding. Leisure v. State, 828 S.W.2d 872, 874 (Mo. banc 1992); Williams v. State, 205 S.W.3d 300, 307 (Mo. App. W.D. 2006). Further, because of our holding on direct appeal, any motion in limine or objection would not have been successful. Counsel is not ineffective for failing to make non-meritorious objections. Williams, 205 S.W.3d at 305, 307. Point four is denied.

(Resp't Ex. L at 7).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate

that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689).

The Missouri Court of Appeals' adjudication of this claim was neither an unreasonable application of, nor was it contrary to Strickland. The Missouri Court of Appeals held that Ms. Blevins did not provide improper particularized testimony on credibility. (Resp't Ex. L at 7). Any argument that the Missouri Court of Appeals misapplied Missouri law on this point is not properly before this court. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Petitioner argues that had counsel interviewed or deposed Ms. Blevins, he would have been better prepared to object to the State's questioning regarding evidence of the victim's

10

deception. First, there is no evidence that counsel was unprepared, or that counsel would have acted differently had he deposed Ms. Blevins. Further, because the Missouri Court of Appeals found that Ms. Blevins' testimony was not improper, any objection to Ms. Blevins' testimony would have been unsuccessful. Counsel was not ineffective in failing to make a meritless objection to Ms. Blevins' testimony. See Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994) ("Counsel is not considered ineffective for failing to make a nonmeritorious objection.").

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.     Ground Two**

In his second ground for relief, petitioner argues that his rights to due process and a fair trial were violated when the State did not disclose during discovery that Ms. Blevins would present an expert opinion regarding the lack of deception in the victim's allegations. The undersigned has already found that petitioner procedurally defaulted this claim. The claim fails on its merits as well.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). In order to comply with Brady, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police. Kyles v. Whitley, 514 U.S. 419, 437

(1995). Thus, there are three components of a Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

In this case, petitioner is unable to establish a Brady violation. First, Ms. Blevin's testimony was not exculpatory or impeaching. Further, petitioner is unable to demonstrate prejudice because, as previously discussed, the Missouri Court of Appeals determined that Ms. Blevins' testimony was not improper.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.     Ground Three**

In petitioner's third ground for relief, he argues that his First Amendment rights were violated when petitioner was alleged to have possessed pornography even though it had nothing to do with the allegations made by the prosecutor.

As previously discussed, petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals reviewed for plain error only. (Resp't Ex. G at 8). The Court did not address whether the admission of this evidence violated petitioner's First Amendment rights. Rather, the Court analyzed this claim as a claim of trial court error, and held that the admission of the testimony did not result in manifest injustice to warrant plain error relief. (Id. at 8-9).

The First Amendment prohibits criminalizing the "mere private possession of obscene material." Stanley v. Georgia, 394 U.S. 557, 568 (1969). "The First Amendment...does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or

intent." Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." Id.

In this case, petitioner was not convicted of possession of pornography. The victim's father, Allen Geiser, testified that he had found pornographic magazines in petitioner's garage and truck, locations where the sexual abuse occurred, in plain view of the victim. (Resp't Ex. A at 72-73). The magazines were not described, and were not admitted into evidence. In addition, the presence of these magazines at the crime scenes was relevant to the commission of sodomy. Petitioner fails to demonstrate a violation of his First Amendment rights.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

**4.     Ground Four**

In his fourth ground for relief, petitioner argues that his Confrontation Clause rights were violated when the State presented hearsay testimony from four witnesses regarding the victim's allegations.

Petitioner raised this claim in his direct appeal, and in his post-conviction proceedings.

The Missouri Court of Appeals held as follows regarding this claim:

> In his motion, [petitioner] identified the four witnesses to whom he was referring as victim's father, Officer Ross, Officer Estes, and Nurse Blevins. On direct appeal, we examined the testimony of these witnesses and held that the victim's father's testimony was admissible to explain subsequent conduct, Officer Ross did not testify to the victim's out-of-court statements, Officer Estes' testimony was not hearsay, and Nurse Blevins' testimony was not improper bolstering. We found no error, plain or otherwise, in the admission of each of these witnesses' testimony.
> These are claims of trial error that were raised and addressed on direct appeal and may not be raised again in a post-conviction motion. Christensen, 875 S.W.2d at 578.

(Resp't Ex. L at 5-6).

"The Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" United States v. Spencer, 592 F.3d 866, 878 (8th Cir. 2010) (quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). As the Supreme Court made plain in Crawford, the Confrontation Clause "applies only to testimonial hearsay statements." United States v. Holmes, 620 F.3d 836, 841 (8th Cir. 2010). "Crawford is also limited to hearsay evidence–that is, evidence offered to prove the truth of the matter asserted." Id. The Confrontation Clause "does not bar the use of testimonial statements for [] purposes other than establishing the truth of the matter asserted.'" Crawford, 541 U.S. at 59 n. 9.

Petitioner fails to demonstrate a violation of his Confrontation Clause rights. First, the Missouri Court of Appeals found on direct review that the testimony at issue was not hearsay. (Resp't Ex. G at 6-8). Further, the victim testified at trial and was, therefore, available for cross-examination. "When the declarant appears for cross-examination at trial, the Confrontation Clause Places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n. 9.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

**5.      Ground Five**

In his fifth ground for relief, petitioner argues that he was denied effective assistance of counsel when trial counsel failed to have petitioner's two-hour police interview transcribed.

On the State's cross-examination of petitioner, petitioner denied sexually molesting the

14

victim. (Resp't Ex. A at 181). The following exchange occurred regarding the victim's allegations:

> [PROSECUTOR]: Now, on December 9th when you talked to Darren Estes, you offered explanations as to why you thought [the victim] might do that, didn't you?
>
> [PETITIONER]: No, I did not.
>
> [PROSECUTOR]: You didn't tell Darren Estes that you thought [the victim] was upset with you?
>
> [PETITIONER]: Yes.
>
> [PROSECUTOR]: Isn't that an explanation?
>
> [PETITIONER]: No, it's not.
>
> [PROSECUTOR]: Didn't you tell Darren Estes that [the victim], you believed [the victim] was upset with you because you wouldn't let him spend the night at your house?
>
> [PETITIONER]: No. I said–
>
> [PROSECUTOR]: You didn't tell–
>
> [PETITIONER]: You want to hear what–
>
> [PROSECUTOR]: --Detective Estes that?
>
> [PETITIONER]: No, sir. Not [the victim]. You got the wrong man.
>
> [PROSECUTOR]: Did Darren Estes than make up a lie to put it in his police report?
>
> [PETITIONER]: I don't know what he did.
>
> [PROSECUTOR]: And didn't you tell Darren Estes that you thought Teresa Jaco put ideas into [the victim]'s head?
>
> [PETITIONER]: Yes, I did.

(Id. at 182). On re-direct, defense counsel questioned petitioner regarding his interview with Detective Estes:

15

> [DEFENSE COUNSEL]: On November 21 when you first heard of these allegations, it was dark, right?
>
> [PETITIONER]: Yes.
>
> [DEFENSE COUNSEL]: Right? And you told Officer Estes two to three weeks later when he interviewed you that [the victim] was upset because you made the boys go home because Clem got onto you because all the grandchildren are driving her nuts Friday, Saturday and Sunday?
>
> [PETITIONER]: Yes, sir.

(Id. at 189).

Petitioner claims that, had counsel gotten the transcript of the police interview, these issues would not have arisen at trial. Petitioner raised this claim in his post-conviction relief motion, and on appeal from the denial of post-conviction relief.

The motion court denied petitioner's claim, finding that petitioner's allegation was conclusory and failed to state facts sufficient for relief:

> The pleading makes the conclusory statement that a transcript of [petitioner]'s statement would have allowed defense counsel to better prepare for State's cross-examination of [petitioner], in particular, the explanation [petitioner] gave the police for why the child would accuse him of sexual abuse, i.e. that the child was upset that [petitioner] would not let him spend the night at his house on a particular occasion. [Petitioner] was fully aware of what he told the police, it was contained in the police reports provided counsel for the defense, there was nothing unfamiliar to [petitioner] discovered at trial which would have been useful to him had his statement been transcribed. In order to warrant a hearing, the [petitioner] must plead facts, not conclusions, which would entitled him to relief. [citation omitted]. [Petitioner] has failed to state any facts showing that any exculpatory evidence of which he was not aware existed in a transcript of his statement. This point may be dismissed without evidentiary hearing.

(Resp't Ex. H at 145).

The Missouri Court of Appeals held as follows:

> [Petitioner]'s allegation contained no facts that demonstrated how the failure to

> obtain a transcribed interview to show that [petitioner] did not offer an explanation of the victim's motivation would have affected the outcome of the trial. We will not draw factual inferences or implications from bare conclusions alleged in this motion. [citation omitted]. Failure to allege facts supporting how counsel's failure would produce a different result is fatal to [petitioner]'s claim. [citations omitted]. Point five is denied.

(Resp't Ex. L at 8).

The Missouri Court of Appeals properly applied <u>Strickland</u>, and found that petitioner was unable to demonstrate prejudice due to counsel's failure to obtain a transcript of petitioner's police interview. This determination is supported by the record. First, a summary of petitioner's statements was contained in the police reports, which petitioner received. As such, petitioner was aware of these statements prior to trial. Further, petitioner admitted on re-direct that he told Detective Estes that the victim was upset with him because petitioner would not allow the victim to spend the night on one occasion. Thus, petitioner's claim lacks merit.

Accordingly, the undersigned recommends that petitioner's fifth ground for relief be denied.

D.  **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); <u>Hunter v. Bowersox</u>, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997)(citing <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994)); <u>Tokar v. Bowersox</u>, 1 F.Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are

17

debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Wayne Windisch for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied.**

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued. The parties are advised they have fourteen (14) days, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 6th day of June, 2012.

                                       */s/ Lewis M. Blanton*
                                       LEWIS M. BLANTON
                                       UNITED STATES MAGISTRATE JUDGE